| Matter of Smith |
|:---:|
| 2025 NY Slip Op 31975(U) |
| June 3, 2025 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2020-3036/B/C/D/E |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
In the Matter of the Application of William K. Smith, MD,
Regarding the Jean Kennedy Smith 1998 Residence
Trust Established under Agreement dated December 21,
1998 between

    JEAN KENNEDY SMITH,
            Grantor, Deceased,

And Jean Kennedy Smith and Charles J. O'Byrne as
Co-Trustees, to Declare an Exercise of a Power of
Appointment Invalid and Other Related Relief.
-------------------------------------------------------------------------x

**ENTERED**

**JUN 0 3 2025**

DATA ENTRY DEPT
New York County Surrogate's Court

DECISION and ORDER

File No.: 2020-3036/B/C/D/E

M E L L A, S.:

The following papers were considered on these two motions to dismiss:

| Papers Considered | Numbered |
|---|---|
| Respondent Charles O'Byrne's Notice of Motion to Dismiss and Affirmation of Angelo M. Grasso, Esq., in Support, attaching Exhibits | 1, 2 |
| Respondent C. O'Byrne's Memorandum of Law in Support | 3 |
| Respondents Amanda Smith Hood and Kym Maria Smith's Notice of Motion to Dismiss and Affirmation of Brian P. Corrigan, Esq., attaching Exhibits | 4, 5 |
| Respondents A.S. Hood and K.M. Smith's Memorandum of Law in Support | 6 |
| Respondent Stephen E. Smith, Jr.'s Memorandum of Law in Opposition to Both Motions to Dismiss | 7 |
| Affirmation of Guardian ad Litem Gerry Wendrovsky, Esq., in Opposition to O'Byrne's Motion to Dismiss | 8 |
| Affirmation of Guardian ad Litem Gerry Wendrovsky, Esq., in Opposition to Hood and Smith's Motion to Dismiss | 9 |
| Petitioner William K. Smith's Memorandum of Law in Opposition to Both Motions to Dismiss | 10 |
| Affirmation of Ross Katz, Esq., in Opposition to Both Motions to Dismiss, attaching Exhibits | 11 |
| Respondent Hood and Smith's Reply Memorandum of Law in Further Support of Motion to Dismiss | 12 |
| Respondent O'Byrne's Reply Memorandum of Law in Further Support of Motion to Dismiss | 13 |

[* 1]

At the call of the calendar on February 9, 2024, the court granted two pre-answer (CPLR 3211) motions to dismiss this petition by William K. Smith, M.D. (William) to declare invalid the exercise of a power of appointment by Charles O'Byrne (Charles) over the corpus of a qualified personal residence trust, known as the Jean Kennedy Smith 1998 Residence Trust (1998 QPRT or Trust).

Relevant Background

Jean Kennedy Smith (Grantor), the last surviving sibling of former U.S. President John F. Kennedy, Jr., died on June 17, 2020. There is no dispute that the 1998 QPRT gave Charles (who was also co-Trustee) a special and exclusive power of appointment[1] to be exercised by him in his individual capacity in his "full and complete discretion" as long as he did so before the second anniversary of the Grantor's death by an acknowledged, written instrument (Trust, Sections 6.3, 6.5).[2]

On June 15, 2022, two days before the deadline, Charles exercised the power of appointment. First, with regard to Grantor's daughter Amanda Smith Hood (Amanda), Charles forgave a $1 million promissory note payable by her to the 1998 QPRT and also appointed to her an outright distribution of $1 million. Second, Charles forgave a $750,000 promissory note payable by Grantor's daughter Kym Smith (Kym) and appointed to her an outright distribution of

---

[1] The power of appointment given to Charles as donee by Grantor was special because he could not exercise it in his favor or in favor of his estate or his creditors; it was exclusive because it allowed him as donee to exercise the power in favor of any of the permissible beneficiaries to the exclusion of others and in any amount he chose (see Matter of Weinstein, 111 Misc 2d 860 [Sur Ct, Kings County 1981]).

[2] Section 6.3 also states that Charles has the power to appoint the assets of the 1998 QPRT "upon such terms, conditions and trusts (which terms and conditions may include the grant to another of a general power of appointment or any special or limited power of appointment exercisable during life and/or by Will) and to or for the benefit of such one or more of the Grantor's descendants . . . ." Section 6.4 includes a perpetuities provision for any trusts "hereby created."

- 2 -

[* 2]

$1.25 million. Finally, Charles appointed the balance of the 1998 QPRT's assets to himself as continuing trustee of a new trust that he established, known as the JKS 1998 QPRT Receptacle Trust, dated June 15, 2022 (Receptacle Trust) (*see generally* EPTL 10-6.1 *et seq.*).

The Receptacle Trust gives Charles discretion to pay income or principal to any of Grantor's issue and continues to grant him (or any successor trustee) a special, exclusive power to appoint the Receptacle Trust's assets among Grantor's issue, or in default of the exercise of that power, to Amanda and Kym, or if they are deceased, to their issue, per stirpes, outright. The Receptacle Trust terminates on the last to occur of (1) the sale of Grantor's Sutton Place apartment, (2) the final resolution of a particular negligence action commenced against the 1998 QPRT in New York County Supreme Court (which the parties indicate may have been resolved), or (3) "the date on which final distributions from all of the Kennedy Trusts (hereinafter defined)" and Grantor's estate have been completed. Charles's continuing power of appointment must be exercised within one year after the termination of the Receptacle Trust.

Under the 1998 QPRT, William was an equal remainder beneficiary with his siblings, Kym, Amanda and Stephen Smith, Jr. (Stephen), if Charles did not timely exercise his power of appointment, that is, he is what is known as a "taker-in-default" of the exercise of the power of appointment. As such, William sought in the underlying proceeding here to declare invalid the exercise of Charles's power of appointment as well as other related relief. Charles moved to dismiss, pre-answer, as did Amanda and Kym for both failure to state a claim under CPLR 3211(a)(7), with Amanda and Kym also claiming under CPLR 3211(a)(1) that William's claims were "utterly refuted" by documentary evidence, namely the provisions of the 1998 QPRT.[3]

---

[3] The court notes that the motion to dismiss by Grantor's daughters also claimed that Petitioner William lacked standing under CPLR 3211(a)(3), but the court found such an assertion meritless because takers in default of the exercise of a power of appointment may challenge the propriety of its exercise by the donee

- 3 -

[* 3]

Stephen opposed the motions to dismiss, as did the guardian ad litem appointed for certain infant grandchildren of the Grantor, who were contingent beneficiaries of the 1998 QPRT.

Discussion

Affording the petition a liberal construction and accepting as true the factual allegations that are not refuted by the Trust instrument itself,[4] the court concluded that Petitioner had failed to state a claim for declaring Charles's exercise of the power of appointment on June 15, 2022 invalid or for granting any of the other relief sought in the petition (*see* CPLR 3211[a][7]). The petition was also dismissed because its allegations are "utterly refuted" by documentary evidence—the terms of the 1998 QPRT (CPLR 3211[a][1]; *see Leon v Martinez*, 84 NY2d 83 [1994]; *Lopez v Fenn*, 90 AD3d 569 [1st Dept 2011]).

There is no ambiguity in the 1998 QPRT, which unequivocally provides that Charles has the power to appoint Trust assets among some of Grantor's descendants to the exclusion of others or in further trust and to continue his power of appointment over the Trust's remainder. Nor does the instrument prohibit Charles from being the trustee of any such further trust.

---

(*see Benjamin v Morgan Guar. Trust Co. of NY*, 163 AD2d 135 [1st Dept 1990]; *Matter of Wadsworth*, 158 AD2d 919 [4th Dept 1990]).

[4] When evaluating a motion to dismiss pursuant to CPLR 3211, the court need not accept as true allegations that are disproved by the documentary evidence in the record (*Loreley Financing [Jersey] No.3 Ltd. v Citigroup Global Markets Inc.*, 119 AD3d 136, n. 2 [1st Dept 2014] [allegations in a pleading will be accepted as true unless refuted by documentary evidence]; *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977] [on a motion pursuant to 3211, court may consider evidentiary material that shows "that a material fact as claimed by the pleader to be one is not a fact at all"]).

- 4 -

Instead, it explicitly grants Charles the authority to appoint Trust assets "upon such terms, conditions *and trusts*" that he deemed appropriate (Trust, Section 6.3 [emphasis added]).

Although a parenthetical in Section 6.3 of the 1998 QPRT further clarifies that Charles's power of appointment could be exercised to give "another" a "general power of appointment or any special or limited power of appointment exercisable during life and/or by Will," the use of the word "another" is not ambiguous in this context. Rather, this language in Section 6.3 clarifies that Charles need not give only himself a continuing power of appointment over the corpus if he elects to exercise his power of appointment in further trust, but he may also give someone else a general or limited power of appointment. Under these circumstances, where there is no ambiguity, dismissal is appropriate (*see Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561 [2005]; *cf. Telerep, LLC v U.S. Intern. Media, LLC*, 74 AD3d 401 [1st Dept 2010] [dismissal under CPLR 3211[a][7] not appropriate if the court concludes there is ambiguity in the instrument being construed]; *see also McLaughlin v Logan*, 89 AD3d 809 [2d Dept 2011]).[5]

As for the balance of the relief sought in the petition[6] – including a declaration that the Receptacle Trust is invalid, a direction to Amanda and Kym to return the appointed assets to the 1998 QPRT, and the removal or suspension of Charles as Trustee – such relief necessarily fails

---

[5] Any suggestion in the petition that Charles breached his fiduciary duty as Trustee by exercising his power of appointment in the manner that he did fails because he exercised the power in his individual capacity. To the extent that the parties opposing the motion claim that a donee of an exclusive power of appointment, like Charles here, owes a fiduciary duty to treat all permissible appointees equally, they have failed to provide any authority in support of that claim. To condone such a proposition would improperly convert and re-write an exclusive power – where appointees may be chosen by the donee to the exclusion of some – into a non-exclusive one – where all appointees must be favored with an appointment by the donee of the power.

[6] Although William also sought to compel an accounting for the 1998 QPRT, that request has been rendered moot by Charles's filing of his account as Trustee.

- 5 -

given the court's dismissal of the claim that Charles's exercise of the power of appointment was invalid. These conclusions, however, do not have an impact on any claim that Charles breached his fiduciary duty by engaging in acts other than the exercise of his power of appointment or any challenge to the propriety of professional fees and disbursements from the Trust, which should be determined in the context of the accounting for the 1998 QPRT that has been filed by Charles as Trustee.

Accordingly, the motions were granted, and the court dismissed the petition.

This decision, together with the transcript of the February 9, 2024 proceedings, constitutes the order of the court. The compensation of the guardian ad litem is being fixed by separate decision and order.

Dated: June 3, 2025

_____
SURROGATE